## UNITED STATES *v.* NORTHERN PACIFIC RAILROAD COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 145.   Argued January 5, 1904.—Decided February 23, 1904.

The act of July 2, 1864, granting lands to the Northern Pacific Railroad Company did not take any lands out of the disposition of Congress until the line of the road was definitely located by maps duly required by the act, and it has been decided by this court that the Perham map of 1865 even if valid as a map of general route did not operate as a reservation.

When Congress, by resolution of May 31, 1870, made an additional grant to the Northern Pacific Railroad Company for a branch road to Puget Sound *via* the valley of the Columbia, the United States still had full title not reserved, granted, sold or otherwise appropriated to the lands of the new grant which fell within the lines of the former grant and on completion of the branch road the railroad company was entitled to a patent for such over-lap of said lands as it had earned.   *United States* v. *Oregon & Cal. R. R. Co.*, 176 U. S. 28, followed.

THIS was a suit brought by the United States against the Northern Pacific Railroad Company and the Northern Pacific Railway Company to cancel patents issued in May, 1895, by the United States to the railroad company, to whose rights the railway company had succeeded. The lands are situated in the State of Washington, north of Portland, in the State of Oregon. The case was heard in the Circuit Court on facts stipulated and the bill dismissed, whereupon it was carried to the Circuit Court of Appeals for the Ninth Circuit, and that

court certified to this court certain questions on which it desired instructions. The whole record and cause were then required to be sent up for consideration.

*Mr. Charles W. Russell,* Special Assistant Attorney General, for the United States:

The facts differ from those in the *Oregon and California Case,* 176 U. S. 28, for in this case there is no overlap but a peculiar single scheme concerning one road and one grantee. Every granting act is a separate law, and its intent is to be separately inquired into. The government is equitably entitled to some quadrangle as falling within the grant of 1864. Congress expected in 1870 that one whole road would be built, and had no expectation that a failure would occur at any particular point. The maps of 1865–1870, sufficiently identified the grant of 1864 as between grantor and grantee to exclude the lands from the grant of 1870.

The railroad company is estopped. What is not clearly granted belongs to the government and must not be patented away. Doubt must make the grant fail. *United States* v. *Southern Pacific,* 146 U. S. 598.

Under the resolution of 1870, no grant was made of any lands except those free from claims or rights at the time of definite location. See *Northern Pacific R. R.* v. *Musser-Sauntry Co.,* 168 U. S. 608 ; *Northern Pacific R. R.* v. *Sanders,* 166 U. S. 620 ; *Newhall* v. *Sanger,* 92 U. S. 761 ; *Southern Pacific* v. *United States,* 189 U. S. 447. The Perham map was the general route of the main line ; the withdrawal requested thereon constituted a claim. If this claim existed under the grant of 1864, the new grant did not embrace these claimed lands. *United States* v. *Northern Pacific Ry.,* 152 U. S. 294 ; *Northern Pacific Ry.* v. *DeLacey,* 174 U. S. 628 ; *Sioux City R. R.* v. *United States,* 151 U. S. 349, distinguished.

After withdrawal and general route map substantial rights to particular lands vest, there is no longer a float, the lands cease to be public and are not intended to pass under the usual language in subsequent grants.

Float is not a statutory word, but is a mere convenient

phrase to signify something floating or in the air. The idea may have originated in the old case of *Rutherford* v. *Green,* 2 Wheat. 196, in which the grant to General Green of a quantity of lands in Ohio was held to pass the title *in præsenti,* but required identification of the lands to make it apply to particular lands. In the earliest railroad cases in which we find the word "float," *Railroad Co.* v. *Fremont County,* 9 Wall. 89, 94; *Railroad Co.* v. *Smith,* 9 Wall. 95; *Schulenburg* v. *Harriman,* 21 Wall. 44; *Leavenworth &c. R. R. Co.* v. *United States,* 92 U. S. 733; *Missouri, K. &c. R. R. Co.* v. *Kansas Pacific,* 97 U. S. 491; *R. R. Co.* v. *Baldwin,* 103 U. S. 426; *Grinnell* v. *R. R. Co.,* 103 U. S. 739; *Van Wyck* v. *Knevals,* 106 U. S. 360; *St. Paul R. R.* v. *Winona,* 112 U. S. 720, the grant was made and the line of the road was to be "definitely fixed," without always saying how. The court said that there was a float until this definite fixing.

And see also *Newhall* v. *Sanger, supra; Shiver* v. *United States,* 159 U. S. 633. As to effect of the filing a general map, see besides cases already cited, *Kansas Pacific* v. *Dunmeyer,* 113 U. S. 629; *Walden* v. *Knevals,* 114 U. S. 373; *Wisconsin Central R. R.* v. *Price County,* 133 U. S. 496; *St. P. & Pacific* v. *Northern Pacific,* 139 U. S. 1; *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 245; *Sioux City Land Co.* v. *Griffey,* 143 U. S. 32; *The Buttz Case,* 119 U. S. 604.

When the grant of 1870 was definitely located the grant of 1864 was not a float, but an effective grant of particular lands. Cases *supra,* and *Menotti* v. *Dillon,* 167 U. S. 703.

The rights granted and vested under the act of 1864 were forfeited in such a way as to benefit the Government and not to cause the enlargement of other grants.

As to the actual decision in the *Oregon and California* case, 176 U. S. 28, the remarks about the Perham map are accompanied by a remark upon a merely hypothetical case which should not overrule other decisions. See also *Doherty* v. *Northern Pacific R. R.,* 177 U. S. 421.

The proposition, relating to the hypothetical case of a good Perham map and withdrawal in 1865, is that the court would, in allowing the Oregon road to get a grant at Portland by the

grant of 1866, be overruling the general doctrine, so well settled, that a doubt is fatal to the grantee. "Silence is negation and a doubt is fatal to the claim." *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659; *Pearsall* v. *Great Northern Ry. Co.,* 161 U. S. 1; *Atlantic and Pacific R. R. Co.* v. *Mingus,* 165 U. S. 429; *Leavenworth R. R.* v. *United States,* 92 U. S. 740; *Dubuque and Pac. R. R. Co.* v. *Litchfield,* 23 How. 66, 88; *Matter of Northern Pacific R. R. Co.,* and see 31 Land Decision 34, and cases there cited.

*Mr. Charles W. Bunn* for appellees:

The line east of Portland provided for in the act of 1864 formed nearly a right angle at Portland with the line from there to Puget Sound provided for in the additional grant of 1870. For that reason the two grants overlapped north of Portland as illustrated in the following diagram:

. . The "overlap" in the foregoing diagram is the area included within lines ab, bc, cd and da.   It contains the lands in suit.

The question being, whether these lands were, on May 31, 1870, reserved or appropriated by virtue of the grant of July 2, 1864, or by virtue of any map filed or act taken under the grant, so that they did not pass under it, it is to be noted that the *grant itself* did not reserve the lands.

. The *settled* construction of this grant is that it did not reserve or appropriate any land, or take it out of the disposing power of Congress, until the line of road was *definitely* located by map filed as the act requires.   *Northern Pacific R. R. Co. .v. Sanders,* 166 U. S. 620, 634, 636; *Menotti* v. *Dillon,* 167 U. S. 703, 720 ; *United States* v. *Oregon, etc., R. Co.,* 176 U. S. 28, 43 ; *Nelson* v. *Northern Pacific Ry. Co.,* 188 U. S. 108, 119.

Therefore the inquiry is further narrowed to whether the line from Wallula to Portland had been definitely located when the Joint Resolution of 1870 was passed.

This question is answered in the negative by the *Oregon and California* case, 176 U. S. 28 ; *Doherty* v. *Northern Pacific R. R.,* 177 U. S. 421, 432 ; *Wisconsin Central R. R.* v. *Forsythe,* 159 U. S. 46.

Mr. Chief Justice Fuller delivered the opinion of the court.

By the act of Congress of July 2, 1864, 13 Stat. 365, c. 217, a grant was made to the Northern Pacific Railroad Company in aid of the construction of a railway from Lake Superior to some point on Puget Sound, with a branch *via* the Columbia River to a point at or near Portland, Oregon, of lands to which "the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from preëmption, or other claims or rights, at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the Commissioner of the General Land Office."  .

On May 31, 1870, Congress passed a joint resolution making an additional grant to the same company for the location and

construction of " its main road to some point on Puget Sound *via* the valley of the Columbia River, with the right to locate and construct its branch from some convenient point on its main trunk line across the Cascade Mountains to Puget Sound." 16 Stat. 378.

The line east of Portland provided for in the act of 1864 formed nearly a right angle at Portland with the line from there to Puget Sound provided for in the joint resolution, and thus the two grants overlapped, and the lands in suit fell within the overlap.

But the line down the Columbia from Wallula to Portland was never built and the grant was forfeited September 29, 1890, 26 Stat. 496, c. 1040, while the line from Portland to Puget Sound and east across the Cascade Mountains was built and the grants earned.

Holding that the lands in the overlap passed to the company under the resolution of 1870, the Interior Department patented those in question to the railroad company, but afterwards, and on July 18, 1895, it was held that the lands did not pass under that grant, because at its date they were reserved or appropriated under the grant of 1864 to the same company. 21 L. D. 57.

That grant did not in terms reserve the lands, and the question would seem to be whether the line down the Columbia from Wallula to Portland had been definitely located May 31, 1870, since it is settled that the act of 1864 did not take any lands out of the power of disposition of Congress until the line of road was definitely located by maps duly filed as required. *Northern Pacific R. R. Co.* v. *Sanders,* 166 U. S. 620 ; *United States* v. *Oregon & California R. R. Co.,* 176 U. S. 28. The argument that the topography of the country between Wallula and Portland was such that the lands necessarily fell within the boundaries of that grant is without merit, for it cannot be assumed that Congress intended itself to definitely locate that part of the line in view of the language used and the settled law on the subject.

And it does not appear that any portion of the line from Wallula to Portland was ever definitely located, but it does

appear that the line from Portland to Puget Sound was definitely located under the resolution of May 31, 1870, in part September 13, 1873, and the remainder September 22, 1882; that the road was completed as located, and was accepted by the government.

It is true that, March 6, 1865, Josiah Perham, then president of the Northern Pacific Company, transmitted to the Secretary of the Interior a map of the general line of the road, which the Secretary transmitted to the Commissioner of the General Land Office, with the recommendation that the lands along the line indicated be withdrawn. But the Commissioner protested against the acceptance of the map, and his letter to the Secretary, giving his reasons, bears an endorsement in pencil to the effect that the refusal to accept was sustained by the Secretary.

The by-laws of the company showed no authority in its president to locate the line, and its records, up to May 18, 1865, showed no action conferring such authority. No withdrawals were made under the alleged map.

In *United States* v. *Oregon & California R. R. Co., supra,* it was held that if the Perham map were valid as a map of general route, it did not operate as a reservation, and in *Doherty* v. *Northern Pacific Railway Company,* 177 U. S. 421, it was referred to as if not constituting a location even of the general route. It was not authorized by the company, was not accepted by the Department, and was practically worthless.

It is also true that on July 30, 1870, two maps of general route were transmitted to the Secretary, one of them showing a line extending from the mouth of the Montreal River, Wisconsin, to a point at the mouth of the Walla Walla River in Washington; and the other from the mouth of the Walla Walla, extending down the valley of the Columbia River to a point near Portland, and thence northerly to a point on Puget Sound. Withdrawals along the route so designated were directed, and so far as the line from Portland to Puget Sound was concerned the withdrawals must have been under the resolution. And the lands in suit are opposite to that part of the line.

The Circuit Court of Appeals in its certificate states that it appears to that court "that the case presents issues and facts identical with those which were involved in the case of the *United States* v. *The Oregon & California Railroad Company*, decided by the Supreme Court of the United States and reported in 176 U. S. 28, with this difference, that the defendant, the Northern Pacific Railroad Company, is the grantee of both the grants of land, the overlapping portions of which are the subject of the controversy herein, and that this case is ruled by the decision of the Supreme Court in the case above referred to, unless the fact that the Northern Pacific Railroad Company, by reason of being the grantee of both said land grants, is estopped to question the sufficiency of its own maps to designate the boundaries of its grant by virtue of the act of July 2, 1864."

The contention in the case thus referred to was that the lands there in controversy, which had been patented to the Oregon and California Railroad Company, were reserved and appropriated for the benefit of the Northern Pacific Railroad Company under the act of July 2, 1864, and by reason of the filing of the Perham map. By the act of July 25, 1866, Congress made a grant of lands in aid of the construction of a railroad and telegraph line between Portland, Oregon, and the Central Pacific Railroad in California. That grant was in the usual terms employed in such acts. Subsequently the benefit of the grant as to that part of the road to be constructed in Oregon was conferred upon the Oregon Central Railroad Company. The lands in dispute, whether place or indemnity, were within the limits of the grant of 1866. The entire line of road of the Oregon and California Railroad Company, which was the successor of the Oregon Central Railroad Company, was fully constructed and duly accepted by the president, and at the time the suit was begun was being operated and had been continuously operated by that company. The Oregon company filed its map of definite location in 1870, and it was accepted by the Land Department. There was no withdrawal of indemnity lands on the proposed line of the Northern Pacific Railroad Company between Wallula and Portland, nor was

there any definite location or construction of its road opposite
to the lands in suit. The forfeiture act was passed Septem-
ber 29, 1890. It was held that nothing in the act of 1864
stood in the way of Congress subsequently granting to other
railroad corporations the privilege of earning any lands that
might be embraced within the general route of the Northern
Pacific Railroad; and that, as the grant contained in that act
did not include any lands that had been reserved or appro-
priated at the time the line of the Northern Pacific Railroad
was definitely fixed, which it had not been at the time the act
of July 25, 1866, was passed, or when the line of the Oregon
company was definitely located; as the lands in dispute were
within the limits of the grant contained in the act of 1866, and
the road of the Oregon railroad was definitely fixed at least as
early as January 29, 1870, the Northern Pacific Railroad
Company having done nothing prior to the latter date, except
to file the Perham map of 1865, which map was not one of
definite location and was not accepted; and, as, prior to the
forfeiture act of September 29, 1890, there had not been any
definite location of the Northern Pacific Railroad opposite the
lands in dispute, there was no escape from the conclusion that
the lands were lawfully earned by the Oregon company and
were rightfully patented to it.

We do not think the fact that the Northern Pacific Com-
pany was the grantee in both grants limits the force of this
decision. The resolution of 1870 and the act of July 2, 1864,
were *in pari materia*, and no reason is perceived for holding
that the act operated to exclude from the subsequent grant by
the resolution.

In *Wisconsin Central Railroad Company* v. *Forsythe*, 159
U. S. 46, two grants had been made to the State of Wisconsin,
in 1856 and 1864, for the benefit of two railroad companies,
and there had been a withdrawal of indemnity lands of the one
grant, which conflicted with the subsequent place grant, and we
held that as both grants were to the State, although one grant
had been conferred on one company, and the other on another,
the lands in dispute were not excepted from the later grant; and
Mr. Justice Brewer, speaking for the court, said : "For whose

benefit was the withdrawal of the lands within the indemnity · limits of the Bayfield road. made? Obviously, as often declared, for the benefit of the grantee. It is as though the United States had said to the grantee: we do not know whether, along the line of road, when you finally locate it, there will be six alternate sections free from any preëmption or other claim, and, therefore, so situated that you may take title thereto, and so we will hold from sale or disposal to any one else an additional territory of nine miles on either side that within those nine miles you may select whatever lands may be necessary to make the full quota of six sections per mile. When Congress, by a subsequent act, makes a new and absolute grant to the same grantee of lands thus held by the Government for the benefit of such grantee, upon what reasoning can it be said that such grant does not operate upon those lands?"

As to the maps of general route of July 30, 1870, they were filed two months after the date of the resolution, were not maps of definite location, and included the line authorized by the resolution. These lands were opposite to part of that line, and all the unappropriated odd sections so situated, within the prescribed limits, were granted.

The decree of the Circuit Court is                    *Affirmed.*

MR. JUSTICE McKENNA took no part in the decision of this case.