### STEARNS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 1, 1907.)

No. 2,411.

1. CONSPIRACY—INDICTMENT—CONSTRUCTION.

While a charge of conspiracy to defraud the United States under Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], which wholly omits some essential element of the offense, cannot be aided by the statement of acts done to effect its object, this does not prevent reference to such state-

ment for the purpose of ascertaining the sense in which terms are used in charging the conspiracy.

**2. SAME.**

An indictment under Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], which charges a conspiracy to defraud the United States of certain of its lands by means of false forged and fraudulent entries thereof under the homestead law, and avers that such lands were "in the district of lands subject to entry under the homestead laws of the United States" at a certain land office, and also in stating the acts done pursuant to such conspiracy charges the filing of applications for homestead entry of certain described "public lands of the United States subject to homestead entry," is not fatally defective, because in charging the conspiracy it does not expressly aver that the lands of which it was the purpose to defraud the United States were public lands, subject to homestead entry.

**3. PUBLIC LANDS—MEANING OF TERM.**

The words "public lands," used in connection with entries in the land offices of the United States, if nothing be said to the contrary, relate to lands of the United States which are subject to disposition in some form under the public land laws, and not to those which are set apart and used for some special public purpose, such as post office sites, military reservations, and the like.

**4. SAME—HOMESTEAD ENTRIES—USE OF TO DEFRAUD UNITED STATES WHEN LANDS NOT SUBJECT TO DISPOSAL IN THAT WAY.**

Not all public lands are subject to homestead entry, and yet such an entry may be employed as a means of defrauding the United States of public lands not subject to disposal in that way, as where the exception turns upon a question of fact, such as whether the lands contain valuable coal or mineral deposits.

**5. CONSPIRACY—INDICTMENT—STATEMENT OF MEANS OF EFFECTING OBJECT.**

Quære, whether it is necessary, in an indictment under Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], to set forth the means of effecting the object of the conspiracy charged, or to describe them so fully as to make their adequacy apparent.

**6. CRIMINAL LAW—MOTION IN ARREST OF JUDGMENT—GROUNDS.**

The objection that an indictment for conspiracy to defraud the United States of certain public lands does not make it altogether clear to what lands the conspiracy related cannot be taken by a motion in arrest of judgment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 2454.]

**7. SAME—MOTION FOR DIRECTION OF VERDICT—GROUNDS.**

A verdict of acquittal in a criminal case will not be directed because of a defect in the indictment, unless it is one which would be fatal on motion in arrest of judgment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1727.]

**8. SAME—WAIVER OF EXCEPTION TO RULING.**

An exception to the overruling of a motion for a directed verdict of acquittal at the close of the government's case on the ground of the insufficiency of the evidence is waived by the defendant by introducing evidence in his own behalf.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 2124.]

**9. CONSPIRACY—DEFRAUDING UNITED STATES—POSSESSION OF PUBLIC LANDS.**

A conspiracy to defraud the United States of the possession of public lands by means of fraudulent homestead entries is within Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], although there is no purpose to carry the preliminary entries to final entry and patent.

**10. PUBLIC LANDS—"ENTRIES"—MEANING OF TERM.**

In statutes and in common parlance the word "entries," when applied to proceedings in the land office under the homestead law, is used with various meanings—sometimes in the sense of preliminary entries, at other times in the sense of final entries, and again in the sense of the proceedings as a whole.

In Error to the District Court of the United States for the District of Minnesota.

R. W. Stewart (John F. Hughes, on the brief), for plaintiff in error.

Charles C. Houpt, U. S. Atty. (Joel M. Dickey, Asst. U. S. Atty., on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. Royal B. Stearns, with another, was convicted in the District Court of a conspiracy to defraud the United States, a crime denounced by section 5440, Rev. St., as amended May 17, 1879, 21 Stat. 4, c. 8 [U. S. Comp. St. 1901, p. 3676], which reads:

"If two or more persons conspire either to commit any offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

The indictment charges the conspiracy in this way:

"The said Royal B. Stearns and William T. Horsnell did then and there unlawfully, wrongfully, feloniously, and knowingly conspire, combine, confederate, and agree together to defraud the United States of the title and possession of certain lands of the said United States, of great value, under the homestead laws of the said United States, by means of false, feigned, forged, fraudulent, and fictitious entries of said lands under the homestead laws of the United States, which said lands were then and there situate in the state and district of South Dakota, and in the district of lands subject to entry under the homestead laws of the United States at the local land offices of the United States, in the Pierre land district and in the Chamberlain land district, both of said land districts then and there being in the state and district of South Dakota."

And it then charges with much particularity the doing of several acts to effect the object of the conspiracy, the substance thereof being that the defendants caused to be presented and filed in said local land offices certain described homestead applications accompanied by certain affidavits, which purported to have been subscribed and sworn to by bona fide homestead applicants in conformity with the homestead laws of the United States and the regulations of the General Land Office, but which, as was well known to the defendants, were false, forged, and fraudulent in this: They had not been subscribed or sworn to before the officer whose jurat was thereto attached, and were not made by bona fide homestead applicants. This part of the indictment fully describes the specific lands embraced in these applications, and states that they were "public lands of the United States, subject to homestead entry," at said land offices.

Before the trial the sufficiency of the indictment was not questioned in any way, but after verdict it was challenged by a motion in arrest

**of** judgment, the denial of which is assigned as error. The contention is that the indictment charges a conspiracy to defraud the United States of the title and possession of some of its lands by means of fraudulent homestead entries, without charging that the lands were public lands, subject to homestead entry, and that it is therefore fatally defective, first, as not showing that the object of the conspiracy could be effected by the means stated, and, second, as not enabling the accused to prepare their defense, because leaving it uncertain whether they would be confronted at the trial with proof that the conspiracy related only to public lands, subject to homestead entry, or extended to other lands of the United States, not public or subject to homestead entry, such as post office sites, military reservations, and the like.

Lands of the United States, which are used as post office sites, military reservations, and the like, are not within the operation of the public land laws, and no attempt to make entries of them in the land offices can be effective for any purpose, because the land officers have no authority to dispose of them. Wilcox v. McConnell, 13 Pet. (U. S.) 498, 513, 10 L. Ed. 264; Scott v. Carew, 196 U. S. 100, 109, 25 Sup. Ct. 193, 49 L. Ed. 403; Burfenning v. Chicago, etc., Co., 163 U. S. 321, 16 Sup. Ct. 1018, 41 L. Ed. 175; Smelting Co. v. Kemp, 104 U. S. 636, 641, 26 L. Ed. 875. So long and firmly has this been settled, and so generally is it recognized throughout the public land states and territories, that when mention is there made of entries in the land offices it is immediately understood, if nothing be said to the contrary, that they relate to lands which are subject to disposition in some form under the public land laws, and not to those which are set apart and used for some special public purpose. True, the former. when there is occasion to distinguish them from the latter, are usually spoken of as "public lands" (Barker v. Harvey, 181 U. S. 481, 490, 21 Sup. Ct. 690, 45 L. Ed. 963; Northern Lumber Co. v. O'Brien, 71 C. C. A. 598, 139 Fed. 614), but this is not essential if the meaning be otherwise plain. Leavenworth, etc., Co., v. United States, 92 U. S. 733, 23 L. Ed. 634.

Not all public lands are subject to homestead entry, but it does not follow that attempts to make homestead entries of such as are excepted from that mode of disposal are never effective. When the exception turns upon a question of fact, such as whether the lands contain valuable coal or mineral deposits, the determination of which is committed to the land officers and must rest upon proofs outside the records, it is always possible for applicants, by making false proofs, to impose upon these officers, and secure the allowance by them of homestead entries of lands of the excepted class. Of course such entries are fraudulent, but, being allowed in the exercise of a lawful authority, they are not void, but voidable merely, and may be the means of defrauding the United States. Burfenning v. Chicago, etc., Co., supra; United States v. Mackintosh, 29 C. C. A. 176, 85 Fed. 333; United States v. Minor, 114 U. S. 233, 240, 5 Sup. Ct. 836, 29 L. Ed. 110; Steele v. Smelting Co., 106 U. S. 447, 453, 1 Sup. Ct. 389, 27 L. Ed. 226; United States v. Winona, etc., Co., 15 C. C. A. 96, 103, 67 Fed. 948; Parsons v. Venzke, 164 U. S. 89, 92, 17 Sup. Ct. 27, 41 L. Ed. 360; In re John O'Dea, 6 Land Dec. Dep. Int. 819. And they may

also be fraudulent for other reasons, applicable to all original homestead entries, as where they are made in pursuance of collusive agreements by the applicants to give to others the benefit thereof, or are made by persons who falsely represent themselves as possessing the requisite qualifications when they do not possess them.

We are aware that there is persuasive authority for the position, taken by the learned judge who presided at the trial, that under section 5440 the means of effecting the object of the conspiracy do not constitute an element of the offense and need not be stated in the indictment, or, if stated, need not be so fully described or so supplemented by the statement .of other matters as to make their adequacy apparent. United States v. Dustin, 25 Fed. Cas. 944, No. 15,011; United States v. Dennee, 25 Fed. Cas. 818, No. 14,948; United States v. Gordon (D. C.) 22 Fed. 250; United States v. Benson, 17 C. C. A. 293, 298, 70 Fed. 591, 596; Gantt v. United States, 47 C. C. A. 210, 108 Fed. 61. See, also, United States v. Cruickshank, 92 U. S. 542, 558, 23 L. Ed. 588; Pettibone v. United States, 148 U. S. 197, 203, 13 Sup. Ct. 542, 37 L. Ed. 419; Dealy v. United States, 152 U. S. 539, 544, 14 Sup. Ct. 680, 38 L. Ed. 545. But as in the present case the result must be the same whether this position be correct or otherwise, and as its correctness was neither affirmed nor denied in argument, we deem its consideration at this time unnecessary.

With these preliminary observations, some of which will serve to avoid any misapprehension of what is here decided, we proceed to consider the objections made to the indictment. The act of conspiring, the purpose to defraud the United States of the title and possession of certain of its lands, and the doing of several acts to effect this purpose are all directly and plainly stated. And in like manner it is stated that the unlawful purpose was to be effected under color of the homestead law, by means of false, forged, and fraudulent homestead entries. This, without more, strongly implies that the conspiracy had in view lands which were public and possible of acquisition through such entries. But the matter is not left to implication merely. It is further stated that the lands were "in the district of lands subject to entry under the homestead laws of the United States" at designated local land offices, a permissible meaning of which is that the lands were part of those which were subject to homestead entry at these land offices. And that this is what was intended is apparent when the statement of the overt acts is examined, for it is there said that "to effect the object of such conspiracy" the accused caused certain homestead applications to be made at these land offices for specific "public lands of the United States, subject to homestead entry" thereat. We recognize that a charge of conspiracy under section 5440, which wholly omits some essential element of the offense, cannot be aided by the statement of acts done to effect its object (United States v. Britton, 108 U. S. 199, 205, 2 Sup. Ct. 531, 27 L. Ed. 698), but this does not prevent reference to such statement for the purpose of ascertaining the sense in which terms are used in charging the conspiracy. Dealy v. United States, 152 U. S. 539, 545, 14 Sup. Ct. 680, 38 L. Ed. 545.

Our conclusion is that the indictment, although susceptible of improvement, makes it clear to the common understanding that the

conspiracy had in view public lands which were possible of acquisition by means of homestead entries, and that the accused, attended by counsel as they were, could not reasonably have understood it otherwise. But if it were conceded that the indictment does not make it altogether clear to what lands the conspiracy related—which is the most that is claimed—the defect would not be available on motion in arrest of judgment. As was said by Mr. Justice Brewer in Dunbar v. United States, 156 U. S. 185, 192, 15 Sup. Ct. 325, 39 L. Ed. 390:

"While it may be true that a defendant by waiting until that time [after verdict] does not waive the objection that some substantial element of the crime is omitted, yet he does waive all objections which run to the mere form in which the various elements of the crime are stated, or to the fact that the indictment is inartificially drawn. If, for instance, the description of the property does not so clearly identify it as to enable him to prepare his defense, he should raise the question by some preliminary motion, or perhaps by a demand for a bill of particulars; otherwise it may properly be assumed as against him that he is fully informed of the precise property in respect to which he is charged to have violated the law."

It follows that the motion in arrest of judgment was rightly denied.

At the close of the government's case in chief the accused requested the court to direct a verdict of acquittal, advancing as reasons therefor that the indictment would not sustain a conviction, and that the evidence was not sufficient to take the case to the jury. The request was denied, and error is assigned thereon. It is not usual to question the sufficiency of an indictment in this way, and is not admissible, save for a defect which would be fatal on motion in arrest of judgment, all others being waived, if advantage thereof be not taken in advance of the trial. As has been shown, the indictment was sufficient as against a motion in arrest. In so far as the request questioned the sufficiency of the evidence, it was waived by the action of the accused in subsequently proceeding to offer evidence in their own behalf. Burton v. United States, 73 C. C. A. 243, 142 Fed. 57; School District v. Chapman, 152 Fed. 887.

The matter which next claims our attention is an objection to a portion of the court's charge to the jury. As a preliminary to its statement and consideration it will be well to recite briefly the facts which the evidence tended to establish. Certain ranchmen and stock-growers were maintaining unlawful inclosures of public lands in the Pierre and Chamberlain land districts in South Dakota, were apprehensive that they would be required to remove their inclosures by proceedings under the act of February 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524], and had solicited the defendant Stearns to devise some plan which would enable them to maintain their exclusive use and occupancy of the lands inclosed. Stearns was a land locator at Pierre, S. D., and the defendant Horsnell was conducting an employment office at St. Paul, Minn. At the latter place the defendants entered into this arrangement: Horsnell, upon inducements to be offered by him, was to secure homestead applications, homestead and nonmineral affidavits, and also five-year leases, to be signed in blank by persons visiting his office, and was to transmit these papers to Stearns, who was to insert therein descriptions of public lands so unlawfully inclosed; was to secure false certificates from some officer,

authorized to administer such oaths, that the affidavits were subscribed and sworn to in his presence by those whose names were signed to them; was to present the applications and affidavits, as so perfected in form, at the local land offices and secure the allowance thereon of preliminary homestead entries; and was then to deliver the leases, with the blanks suitably filled in, to those who had the lands unlawfully inclosed. The purpose in this was, not to initiate and secure lawful homestead entries on behalf of bona fide applicants, but to enable those who had the lands unlawfully inclosed to continue in the exclusive use and occupancy of them, as against the United States and the public, during the five-year period prescribed for earning title under the homestead law. Many acts, including those specified in the indictment, were done by one or both of the defendants to effect this purpose. Whether or not it was also the purpose that the preliminary entries should be carried to final entry and patent for the benefit of the defendants, or the ranchmen and stockgrowers in whose behalf they were acting, was the subject of conflicting evidence.

The court, in effect, instructed the jury that, if the charge was otherwise established, it was within the statute, even though the purpose was confined to defrauding the United States of the possession of the lands by means of fraudulent homestead entries, and did not include the acquisition of the title. This, it is urged, was error, because, first, the United States could not be defrauded of the possession by anything short of what would pass the title; second, its possession of public lands is theoretical only and not a thing of value; and, third, the indictment, in charging the conspiracy, uses the word "entries" only in the sense of final entries. We cannot assent to these contentions.

The homestead law plainly confers the right of possession upon the entryman when the preliminary entry is made, for it makes actual settlement, followed by residence and cultivation for a period of five years, a condition to obtaining the title, and requires the applicant to make and file, with the application for the entry, an affidavit "that he or she will faithfully and honestly endeavor to comply with all the requirements of the law as to settlement, residence, and cultivation necessary to acquire title to the land applied for." Rev. St. § 2290; Act March 3, 1891, c. 561, § 5, 26 Stat. 1095 [U. S. Comp. St. 1901, p. 1389]; Rev. St. § 2291 [U. S. Comp. St. 1901, p. 1390]; Shiver v. United States, 159 U. S. 491, 497, 16 Sup. Ct. 54, 40 L. Ed. 231; Peyton v. Desmond, 63 C. C. A. 651, 662, 129 Fed. 1, 12. But the right to the possession, like the right to make the entry, is extended only to those who intend to earn the title by faithfully and honestly complying with the law. To secure the entry by feigning such an intention is to secure it fraudulently, and to then use it as a mere cover for obtaining or prolonging an unlawful possession is to defraud the United States of the possession.

While the government pursues a liberal policy in respect of its public lands, and requires that they shall remain open in order that settlement and entry thereof under the general land laws may not be discouraged or impeded, and that such as are adapted to grazing purposes may be freely accessible to all (Act Feb. 25, 1885, c. 149, 23 Stat.

321 [U. S. Comp. St. 1901, p. 1524]; Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618; Camfield v. United States, 167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260), it does not thereby surrender its possession of them, or render it of no value. On the contrary, this is but an exercise of its right of possession in a manner deemed of advantage to it in the proper execution of the general land laws, and in the accomplishment of the purposes which prompted their enactment.

In statutes and in common parlance the word "entries," when applied to proceedings in the land offices under the homestead law, is used with various meanings—sometimes in the sense of preliminary entries, at other times in the sense of final entries, and again in the sense of the proceedings as a whole. In this indictment it is evidently used in the sense of the proceedings as a whole, because it refers to that whereby the possession and the title are acquired, and so embraces preliminary entries.

We find no error in the record, and the judgment is accordingly affirmed.