FAIN v. UNITED STATES.

BAKER v. SAME.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1913.)

Nos. 3,797, 3,798.

*(Syllabus by the Court.)*

**1.** CONSPIRACY (§ 45*)—CRIMINAL OFFENSE—PUBLIC LANDS—EVIDENCE.

The defendants were charged with a conspiracy in violation of section 5440, Revised Statutes (U. S. Comp. St. 1901, p. 3676), to defraud the United States by inducing false homestead entries, and by clouding the ti tle to lands lawfully entered as homesteads, and preventing the entry of such lands by legitimate entrymen, so as to interfere with the due administration of the law, and they were also charged with the overt acts of purchasing and withholding relinquishments of valid homestead entries, and of instituting false contests of the same entries to effect the object of the conspiracy.

*Held,* the purchasing and the withholding from filing of relinquishments of homestead entries, and the institution and prosecution with probable cause of contests of the same entries, were not acts to effect the object of such a conspiracy, because they were acts authorized by the acts of Congress and the law, and because they did not tend to withhold the lands entered from entry by legitimate entrymen, and evidence of such purchases, relinquishments, and contests was inadmissible to .prove the charge in the indictment.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 100–104; Dec. Dig. § 45.*]

**2.** PUBLIC LANDS (§ 40*)—RELINQUISHMENT OF HOMESTEAD CLAIM—OPERATION AND EFFECT.

A relinquishment of a homestead claim is not a contract with the purchaser. It is only a release of the homesteader's claim to the United States, and it has no effect upon the claim or the entry until it is filed in the proper land office.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 100–102; Dec. Dig. § 40.*]

**3.** CONSPIRACY (§ 33*)—PUBLIC LANDS (§ 40*)—RELINQUISHMENTS—RIGHTS OF HOLDER.

A homesteader has the absolute right and option (1) to file his relinquishment of his claim at any time, or to withhold it from filing forever, and (2) to sell his relinquishment at any time, or to refuse to sell it altogether.

The purchaser of the relinquishment acquires the same right and option, and his purchase and withholding of it from filing is lawful, and does not tend to withhold the land from legitimate entrymen, to interfere with the due administration of the law, or to defraud the United States.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33;* Public Lands, Cent. Dig. §§ 100–102; Dec. Dig. § 40.*]

**4.** CONSPIRACY (§ 33*)—OFFENSES—ESSENTIAL ELEMENTS.

It is not criminal or illegal to do, or to conspire to do, that which the law does not prohibit, but recognizes may be lawfully done without prejudice or injury to the United States or the state.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

**5.** PUBLIC LANDS (§§ 40, 103*)—HOMESTEAD ENTRY—RIGHT TO CONTEST—RELINQUISHMENT.

Any person is authorized by the acts of Congress to contest a home-- stead entry, and the fact that he has purchased a relinquishment of i.

does not disqualify him, nor does the commencement of a contest disqualify him from purchasing a relinquishment of the entry contested.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 100–102, 298, 299, 307; Dec. Dig. §§ 40, 103.*]

6. CONSPIRACY (§§ 33, 45*)—PUBLIC LANDS—EVIDENCE—FALSE STATEMENTS ON IMMATERIAL ISSUES.

Neither the evidence of the contests of valid entries commenced by the defendants, nor the evidence that some of their statements on immaterial issues in their affidavits of contest were false, were either competent or material in this case, because neither had any tendency to prove the withholding of the land from legitimate entrymen, or any interference with the due administration of the law, or any fraud upon the government, because the defendants had the right to contest the entry.

An erroneous statement regarding a fact in a pleading or affidavit in the litigation of a controversy does not subject the maker to a criminal prosecution for an interference with the due administration of the law.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 60, 100–104; Dec. Dig. §§ 33, 45.*]

7. CONSPIRACY (§ 45*)—PUBLIC LANDS—EVIDENCE.

The fact that the entryman Babb was intoxicated once when he bought some groceries for which the defendant Baker paid, and the fact that a witness testified that one Davis, who made a corroborating affidavit in defendant Baker's contest, was a "professional contester and ringer for Baker & Co.," did not tend to prove any fraud on the government, and these facts were immaterial.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 100–104; Dec. Dig. § 45.*]

8. CRIMINAL LAW (§ 424*)—EVIDENCE—STATEMENTS AND ACTS OF CO-CONSPIRATORS.

While the act of one conspirator in the prosecution of the enterprise is, after proof of the conspiracy, evidence against all, his admissions in his narration of past events after the conspiracy has come to an end, either by success or failure, are inadmissible against his fellows.

A letter written by defendant Baker in reference to Babb's entry and relinquishment, after his relinquishment had been filed and the land he had entered had been entered by Jenkins, was incompetent evidence as against defendant Fain, because all the alleged fraud upon the government which could have been perpetrated by the defendants in regard to the Babb entry had been completed before the letter was written.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1002–1010; Dec. Dig. § 424.*

Admissibility on trial of joint indictments of acts and declarations of conspirators and codefendants after accomplishment of object, see note to Sorenson v. United States, 74 C. C. A. 472.]

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Logan Fain and another were convicted of conspiracy to commit an offense against the United States, and bring error. Reversed and remanded.

Ernest O. Patterson, of Dallas, S. D., and Frank R. Aikens, of Sioux Falls, S. D. (Harold E. Judge, of Sioux Falls, S. D., on the brief), for plaintiffs in error.

H. B. Durham, of University Place, Neb., and Charles J. Morris, of Sioux Falls, S. D. (Edward E. Wagner, U. S. Atty., of Sioux Falls, S. D., on the brief), for the United States.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

SANBORN, Circuit Judge. [1] The defendants below, Fain and Baker, were convicted of conspiracy to induce persons to make false entries on public lands, to procure and to hold for sale for their own profit relinquishments by homestead entrymen, and to make and cause to be made false and pretended contests of homestead entries for the purpose of preventing the lands covered by them from being entered by other qualified entrymen until they could sell their relinquishments for their own benefit, in violation of section 5440, Revised Statutes (U. S. Comp. St. 1901, p. 3676). That section reads in this way:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty," etc.

The defendants specify as error the admission and the denial of a motion at the close of the trial to strike out evidence of the following acts which were pleaded in the indictment as overt acts committed to accomplish the object of the conspiracy.

It was established by the evidence, and is conceded, that Kammerer, Strunk, and Rogers made honest and valid homestead entries of their respective tracts of land. If a view of the evidence challenged by the objection and motion now under consideration most favorable to the United States be taken, it goes no further than to tend to show that in September, 1909, the defendants purchased the relinquishments of these homesteaders; that in October, 1909, Baker instituted a contest against Kammerer on the grounds that he had offered his relinquishment for sale, and had sold it to one Smith, when the fact was that he had not sold it to Smith, but had sold it to defendants, and that he had abandoned his homestead for more than six months; that Kammerer's relinquishment was not filed until November 3, 1909, when Baker withdrew his contest and Ernest C. Collier, to whom Kammerer's relinquishment had been sold, entered the land as his homestead; that on September 7, 1909, Fain filed an affidavit of contest against Strunk on the ground that he had offered his relinquishment for sale, and had sold it to one Dennis Y. Hennold, when the fact was that he had not sold it to Hennold; that two other contests of Strunk's claim were filed on September 7, 1909; that on October 14, 1909, Fain filed an amended affidavit to the effect that Strunk had abandoned his homestead for more than six months; that five junior contests for this tract of land were subsequently instituted; that the relinquishment of Strunk has never been filed, and Fain's contest is still pending; that on October 25, 1909, the defendants caused K. T. Coffey to file an affidavit of contest of Rogers' entry, on the ground that he had abandoned his tract for more than six months, and Rogers' relinquishment was never filed.

How did these acts of the defendants tend "to effect the object of the conspiracy," how did they tend to "defraud the United States?" Counsel for the government answer:

"The entries of Kammerer, Rogers, and Strunk took the land temporarily from the public domain and placed it beyond the reach of other entrymen, and it retained that status as to the other entrymen and as to the United States until the relinquishments were filed, or until the contests were terminated one way or the other, and if these defendants purchased the relinquishments and withheld them from the records, and in the meantime covered the records with contests, they thereby kept the land out of the public domain and beyond the reach of other entrymen, and in that way interfered with the due administration of the law and worked a fraud upon the government. This is the theory of this case."

And in support of this theory counsel cite and rely upon the authorities which have sustained prosecutions for conspiracies to defraud the commission into the acceptance of candidates for positions by forging vouchers, and by false impersonations at the civil service examinations, and upon other cases of that class. United States v. Plyler, 222 U. S. 15, 32 Sup. Ct. 6, 56 L. Ed. 70; Curley v. United States, 130 Fed. 1, 11, 12, 64 C. C. A. 369–380; United States v. Bunting (D. C.) 82 Fed. 883; Haas v. Henkel, 216 U. S. 462, 479, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112; United States v. Moore (C. C.) 173 Fed. 122, 124–131; McGregor v. United States, 134 Fed. 187, 195, 69 C. C. A. 477, 485.

The preliminary homestead entries of Kammerer, Strunk, and Rogers segregated the lands they entered from the public domain, and withheld them from entries by others until their entries should be canceled of record in the land office. James v. Germania Iron Co., 107 Fed. 597, 603, 46 C. C. A. 476, 482; Hartman v. Warren, 76 Fed. 157, 160, 22 C. C. A. 30, 33.

These entries gave to them the right to the use and occupation of the land so long as they remained of record in that office. Stearns v. United States, 152 Fed. 900, 906, 82 C. C. A. 48, 54; United States v. Turner (C. C.) 54 Fed. 228; Bentley v. Bartlett, 15 Land Dec. Dept. Int. 179; St. Paul, M. & M. R. R. Co. v. Forseth, 3 Land Dec. Dept. Int. 446. Hence no claim is made, and none could be sustained if made, that any of the acts of the defendants in reference to them tended to deprive the United States of the use or possession of the land, or in any way to defraud it out of anything of pecuniary value. The attempt to sustain the introduction of the evidence regarding these acts is founded on the theory that they "interfere with the due administration of the law," and thereby "work a fraud upon the government." But the chief object of the due administration of the law is to protect every one in his person, his lawful business, and his property, and to secure to him an opportunity, without fear or favor, and without criminal prosecution, to litigate his personal and property claims before impartial tribunals and officers, to receive from them full and patient hearings and just decisions and those who present their claims, even though they are not sustained, to such tribunals or officers are not liable to criminal prosecutions, even though the administration of justice is interfered with and delayed by the use of the time required to adjudge them.

When the defendants bought these relinquishments the lands to which they relate, their use and occupation, were withheld by the entry-

men from entry and possession by others until their entries should be canceled on the records of the land office. The Act of May 14, 1880, c. 89, 21 Stat. 140 (U. S. Comp. St. 1901, p. 1392), provided that the entry of each of these homesteaders might be canceled, and the land he had entered might be opened to settlement and entry again (1) upon his filing a written relinquishment of his claim in the local land office, and (2) upon a successful contest of his claim by any person, and that the successful contestant, in the case of such a contest, should have the right to enter the land in preference to others for 30 days after he received notice of the cancellation of the entry.

These homesteaders had made their entries in April, 1909, under Act March 2, 1907, c. 2536, 34 Stat. 1230, which permitted them to acquire the lands they entered for $6 per acre by complying with the homestead laws and paying $1.25 per acre at the time of their respective preliminary entries, and the remainder of the $6 per acre in five annual payments. Each of them had made his first payment, and had thereby invested in his entry about $200, and each of their entries was valid, and each entryman had 4½ years in which to perfect his homestead right and to prepare to make his final proof, when in September, 1909, he sold his relinquishment to the defendants. Neither the act of Congress nor the law imposes upon a homesteader any duty to file his relinquishment at any time or under any circumstances. Even if after he makes his preliminary entry, and before he makes his final entry, he is compelled by sickness or misfortune to change his mind, or if without compulsion or reason he does change his mind so that he no longer intends to perfect his homestead right and to take and hold his land for the purpose of actual settlement and cultivation by himself for his own benefit, and not for the benefit of any other person, still he has the absolute right and option to withhold his relinquishment from filing, to negotiate its sale, and to sell it, if he can, at the highest price he can obtain for it. His intention to hold his land for his own home or for his own benefit in no way conditions his right to sell his relinquishment. It is only at two times, at the time he makes his preliminary entry and at the time he makes his final proof, that the acts of Congress and the law require that the homesteader shall have the intention to occupy, cultivate, and take his land for his own home and benefit. Except at such times he has the option and the right to intend to file or sell his relinquishment and to abandon his entry, and the option and right to refrain from filing or selling his relinquishment. This right and option to file, or to refuse to file, or to sell, or to refuse to sell, is indispensable to enable him to realize the value of his relinquishment, for it is only by withholding it until he finds a time when he can sell it for a fair price that he can secure its value.

[2] Moreover, a relinquishment is not a contract of the homesteader with the purchaser. It is only a release to the United States of the claim of the entryman to his homestead, and it has no effect upon the entry or the right of the homesteader until it is filed. Bailey v. Olson, 2 Land Dec. Dept. Int. 40, 41; Armstrong v. Miranda, 14 Land Dec. Dept. Int. 133, 136, 138; Robertson v. Messent's Heirs et al., 18 Land

209 F.—34

Dec. Dept. Int. 301, 303; Lewis v. Barnard, 22 Land Dec. Dept. Int. 150, 155.

[3] What the vendee of a relinquishment actually secures by its purchase is the right and option to file or to withhold it, and to sell or to refuse to sell it, which the homesteader had when he sold it. The value of the relinquishment to the homesteader consists in his right and option to withhold it from filing or sale until he can obtain a fair price for it; and, if he cannot obtain such a price, or does not choose to take it, to withhold the relinquishment forever. The purchaser acquires the same right and option which the homesteader had, to file or to withhold the relinquishment from filing, and to sell or to refuse to sell it until he can obtain a fair price for it, and if he cannot obtain such a price, or does not choose to accept it, to withhold the relinquishment forever. In case no contest has been instituted against the claim of the homesteader, and no adverse settlement has been made, there inheres in this option the opportunity to the purchaser to enter the land when he files the relinquishment, and before others may secure that opportunity.

Now there is no doubt that these entrymen had the right to sell their relinquishments at such times as they saw fit. Lindersmith v. Schwiso, 17 Minn. 26 (Gil. 10); Paxton Cattle Co. v. First Nat. Bank of Arapahoe, 21 Neb. 621, 33 N. W. 271, 59 Am. Rep. 852; Pelham v. Service, 45 Kan. 614, 26 Pac. 29; Forman v. Healey, 19 N. D. 116, 121 N. W. 1122; Knapp v. Alexander-Edgar Lumber Co., 145 Wis. 528, 130 N. W. 504, 506, 140 Am. St. Rep. 1091; Chatten v. Walker, 16 Land Dec. Dept. Int. 6; Lewis v. Barnard, 22 Land Dec. Dept. Int. 150; Cummins v. Crabtree, 27 Land Dec. Dept. Int. 711; Stubendordt v. Carpenter, 32 Land Dec. Dept. Int. 139, 142. The correlative right of others to purchase the relinquishments was indispensable to the exercise of the homesteaders' right to sell them, and therefore the defendants, who were in no way disqualified, had the right to purchase them. The things sold were the absolute rights and options of each of the homesteaders to sell or to refrain from selling his relinquishment, and to file at any time he chose, or to refuse to file his relinquishment forever. This right and option in the homesteaders was granted by acts of Congress, and was free and unrestricted under the law. Therefore, neither it nor its exercise could tend to defraud the United States, to interfere with the due administration of the law which authorized them, or to work a fraud upon the government. The sale of this right and option by each homesteader was authorized by the law. By such sales the purchasers obtained the same right and option which the homesteaders had held, and by the same mark that right and option and its exercise by them by withholding the relinquishments from filing in no way tended to accomplish the alleged object of the conspiracy, because it gave them no greater power, right, or opportunity to withhold the lands claimed by the homesteaders from entry by others than the homesteaders had before they sold the relinquishments, and the evidence concerning these relinquishments should have been withdrawn from the jury.

[4] It is neither criminal nor unlawful to do or to conspire to do that which the law does not prohibit but recognizes may be lawfully done without prejudice or injury to the United States or the state. United States v. Biggs, 211 U. S. 507, 521, 29 Sup. Ct. 181, 53 L. Ed. 305.

[5, 6] Nor was the evidence of the contests of these entries by these defendants more relevant or material, and this for two reasons: First, because the contests they instituted did not tend to keep the land out of the public domain and beyond the reach of other entrymen, and in that way to interfere with the due administration of the law and to work a fraud upon the government, but tended to cancel the pending entries, and to restore the land to the public domain, for there is no evidence that the entries would have been canceled sooner if the defendants had not commenced their contests, and the probability is that they would have remained in force until some other person made a contest and carried it to a successful result; second, because these contests were authorized by the acts of Congress, and therefore could not have been criminal or unlawful. Any person was authorized to institute and conduct them, and the fact that one has a relinquishment of an entry does not deprive him of his right to contest it.

But counsel says the affidavits of contest were false. They were not false, however, in regard to any material issue or fact. The extent of their falsity was this: In his original affidavit of contest Baker declared that Kammerer had sold his relinquishment to Smith, when there was evidence tending to show that he had sold it to the defendants, and Baker's contest was well founded in fact. On September 7, 1909, Fain filed an affidavit that Strunk had sold his relinquishment to Hennold when he had not. But Fain filed an amended affidavit in October on the ground that Strunk had sold his relinquishment, and had abandoned his homestead for more than six months, and thereafter, at least, his contest was well founded in fact. There are many reasons why the two statements in the affidavits regarding the sales of the property to Smith and Hennold, respectively, even if false, were immaterial. They did not tend to accomplish the object of the conspiracy to keep the land out of the public domain and beyond the reach of other entrymen; but, if they had any tendency, it was to remove the existing entries, and to open the land to entry by others. Moreover, it was not material whether the homesteaders had sold their relinquishments or not; for, if they had, they had the right to purchase them again and to maintain their homestead rights and their entries until the latter were canceled by contests or by the filing of their relinquishments. The false statements were not material to prove perjury because they related to an immaterial issue, and because that offense was not charged in the indictment and its commission was not in issue. It is not a criminal offense for a litigant to delay the administration of the law by asserting, even under oath, in his pleading or proof the existence of a fact which did not exist. If it were, one or the other of the parties in many a contested lawsuit would either be deterred from asserting the existence of facts the proof of which would be essential to his rights, but doubtful, or would be liable to

punishment for asserting their existence if he failed to prove them. No sound reason is discovered for the introduction in evidence or the consideration by the jury of the affidavits and contests of the entries of Kammerer, Strunk, or Rogers, or of their relinquishments or of the entries themselves. They should have been excluded from the consideration of the jury in the trial below.

In addition to the charges in the indictment which have been discussed, it also charged that in pursuance of the alleged conspiracy the defendants induced Eben H. Babb, on March 3, 1910, to make a false homestead entry, and on September 17, 1910, to deliver to them a relinquishment thereof. Under this charge there was evidence that on March 3, 1910, Babb made a homestead entry and paid $158 thereon under the same act of Congress under which Kammerer, Strunk, and Rogers made their entries, and that he then made the required affidavit that his application was made honestly and in good faith for the purpose of actual settlement and cultivation, and not for the benefit of any other person; that after he had made his entry he executed a relinquishment thereof on the same day, and delivered it to the defendants; that he then went back to Indiana where he had resided, and in April, 1910, returned and built a small house on the land which he had entered; that he moved into it on May 11, 1910; that he brought his mother there in June, 1910, where she remained for some time; that he left the place about September 17, 1910; and that the defendants furnished him the money to make his entry, to make his improvements, and to live upon the land. Babb testified that when he made his entry his affidavit that he applied for the land honestly and in good faith, for the purpose of actual settlement and cultivation, and not for the benefit of any other person, was false, and that he never intended to occupy or cultivate it. He testified that after he had made his entry on March 3, 1910, the defendants paid him $200 for his relinquishment, that he had no further interest in his claim after that, and that the money furnished him by the defendants and his occupation and improvement of the land were for their benefit and not for his. On the other hand, the defendants testified that they did not know that his affidavit was false, and that he did not intend to occupy and improve the land (and Babb did not testify that they had such knowledge); that all the moneys they furnished to him were loaned to him to enable him to maintain his claim; that he executed his promissory notes for it; and that they never bought the relinquishment, but took it as security for the money which they loaned. Promissory notes made by Babb, and his written agreement that the relinquishment was delivered to the defendants as collateral security for his debt, were produced and received in evidence. There was evidence that in September, 1910, Babb executed another relinquishment, and that the defendants sold the latter to John F. Jenkins on September 21, 1910, for $1,500, $500 in cash, and $1,000 in a house and two lots. On September 21, 1910, Jenkins filed this relinquishment with the register of the land office, and entered the land described in it as his homestead. There was other testimony in evidence at the trial, and many letters which passed between Babb and the defendants, and the

sufficiency of all this evidence to sustain the charge regarding the Babb entry was challenged by objections and by a motion for a directed verdict. But as this case must be again tried and upon a different theory, upon the theory that it was lawful for any person to purchase relinquishments and to withhold them from the record and to contest the claims relinquished, and as the evidence at the next trial must necessarily differ from that now before us, the court refrains from expressing an opinion upon the sufficiency of the evidence in hand to sustain the charge relating to the Babb entry, and submits the suggestions for the consideration of the court at the succeeding trial that if there was any conspiracy to defraud the United States in the inception and maintenance of Babb's entry, he must have been an accomplice; that his testimony contradicts his affidavit of application for the entry, and is inconsistent with his promissory notes and his written agreement that the relinquishment of March 3, 1910, should be held as collateral security for his debt; that the defendants are presumed to be innocent until they are proved beyond a reasonable doubt to be guilty; and that—

"It is undoubtedly the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony before giving credence to them." Holmgren v. United States, 217 U. S. 509, 523, 524, 30 Sup. Ct. 588, 592 (54 L. Ed. 861, 19 Ann. Cas. 778); Sykes v. United States, 204 Fed. 909, 913, 123 C. C. A. 205.

T. C. Burns, the register of the land office at Gregory, S. D., wherein the entries here in controversy were made, was a witness for the government. He testified that he knew C. H. Davis, who made a corroborating affidavit regarding the facts stated by Baker in his affidavit of contest of Kammerer's entry, and in answer to the question what Davis' business was he replied "professional contester and ringer for Baker & Co." It is specified as error that a motion to strike out this answer was denied. It should have been granted. The answer disclosed no material fact, nothing that tended to show any defrauding of or intention to defraud the United States by the defendants, nothing but the disposition and intention of the witness.

[7] Cary, a witness for the government, testified that while Babb was living on the land he bought groceries of him, and Baker paid for them. Over the objection of the defendants he was permitted to testify that Babb was under the influence of liquor one day when he bought some groceries. That fact was immaterial, and the evidence of it should have been excluded.

[8] Over the objection of Fain that it was incompetent evidence against him, a letter to Babb was received in evidence, which had been written by Baker on October 14, 1910, 23 days after Babb's relinquishment was filed and his land was entered by Jenkins, in which letter Baker stated his sale of Babb's relinquishment, and that as soon as he could cash out, he would add up Babb's notes and the amounts of cash he had loaned him, and if they could get any balance, would send it to him. The letter was not competent evidence against Fain, because it was not written to effect the object of the alleged conspiracy, but to narrate how that object had been attained after it had been

reached, and such a narration by a co-conspirator is no evidence against his fellow. While the act of one conspirator in the prosecution of the enterprise is, after proof of the conspiracy, evidence against all, his admissions in his narration of past events after the conspiracy has come to an end, either by success or failure, are inadmissible in evidence against his co-conspirators. Logan v. United States, 144 U. S. 263, 309, 12 Sup. Ct. 617, 36 L. Ed. 429; Brown v. United States, 150 U. S. 93, 98, 14 Sup. Ct. 37, 37 L. Ed. 1010; Lonabaugh v. United States, 179 Fed. 476, 481, 103 C. C. A. 56, 61.

Let the judgment below be reversed, and the case be remanded to the court below, with instructions to grant a new trial.