**GAMBINO v. UNITED STATES, and three other cases.**

Nos. 7112–7114, 7124.

Circuit Court of Appeals, Third Circuit.

Dec. 8, 1939.

Michael Serody and B. D. Oliensis, both of Philadelphia, Pa., for appellants in Nos. 7112-7114.

Patrick J. Friel, of Philadelphia, Pa., for appellant in No. 7124.

J. Cullen Ganey, U. S. Atty., James P. McCormick, Asst. U. S. Atty., and Blair M. Ilderton, Atty., Alcohol Tax Unit, all of Philadelphia, Pa., for appellee.

Before MARIS, CLARK, and JONES, Circuit Judges.

MARIS, Circuit Judge.

The appellants and a number of others were indicted for conspiracy to violate the alcohol tax laws. After the arrest of the defendants and the termination of the conspiracy, one of the defendants, F. J. McMahon, while in the custody of government officers, signed a statement in which he confessed his own guilt and implicated a number of the defendants. Later McMahon pleaded guilty, while the appellants and certain other defendants who had pleaded not guilty went to trial. At the trial the Assistant United States Attorney proposed to have McMahon's statement read in evidence. The following colloquy, ruling and instruction to the jury then ensued:

"Mr. Serody: May it please the Court, I would like to object to the introduction of that statement at this time, in so far as it is evidence solely against Mr. McMahon and can have no purpose in this trial, and for that reason I ask an exception to the introduction of anything contained in that statement.

"Mr. McCormick: The trial has not been completed. There are still defendants on trial. The statement is a necessary link in the production of the evidence showing the whole transaction. As long as there is one defendant here, I take it it is my duty to go on and prove a full conspiracy against that one defendant.

"Mr. Serody: May it please the Court, it is impossible to conceive how a statement made by a defendant who has pleaded guilty can be used against other defendants, when that statement can't be evidence against anybody but the person who has entered the plea.

"Mr. McCormick: I haven't said that it would be. I said it was given just to prove a full conspiracy.

"Mr. Serody: Then it has no place in the case. A statement made by a defendant after the conspiracy is ended can not be used as proof of the conspiracy. It can only be used as proof of the participation of that defendant himself.

"Mr. McCormick: The statement may be corroborative of other evidence produced by other witnesses.

"The Court: Mr. Serody, I have known instances where persons have pleaded guilty to a conspiracy, and at the conclusion of the trial they have been acquitted because the evidence did not show a conspiracy. The entering of a plea of guilty from a conspiracy does not prove the conspiracy. For instance, now, suppose this case progressed and at the conclusion of the case the Government had not established a conspiracy. I would direct that Mr. McMahon's plea of guilty be withdrawn and he be permitted to enter a plea of not guilty and discharge him.

"Mr. Serody: But that doesn't change—

"The Court: Yes, but there has been a good bit of logic in your point. I see fully your point. If it was any other case except conspiracy, I would sustain your objection.

"Mr. Serody: That is a fundamental principle of law. The only case in which such a question can be raised is in a conspiracy case. If this was a trial for a substantive offense, there wouldn't be any necessity to even make an objection, but because a statement which is made by a defendant after the conspiracy is ended can only be used against the defendant, it can't have any evidentiary value unless the defendant is on trial.

"The Court: I will tell you what I will do. I will direct that this statement be read and in the place of names being mentioned, I am going to ask that Mr. Leeson read "A defendant", so that no names will be mentioned. It is very important to have this testimony to establish whether or not a conspiracy existed. Now, if I eliminate the names so that no defendant is mentioned, I am not hurting anybody.

"Mr. Serody: Well, I won't concede that, if Your Honor please.

"The Court: Yes, but you are going off on an entirely different ground. I am listening to your objection on the ground of actual equity and actual fairness, but I can't go with you when you say that you want the testimony—the statement excluded altogether.

"Mr. Serody: My objection, if Your Honor please, is based not on the equities but on the rule of evidence that applies. And under the rule of evidence I am certain that that statement is not admissible, and I, therefore, can't see anything—

"The Court: Not admissible against whom?

"Mr. Serody: Against anybody except McMahon, and if he has pleaded guilty it is not admissible.

"The Court: The guilty plea does not establish guilt. Conspiracy is a matter of law and facts. The fact situation Mr. McMahon has pleaded to. The law situation will have to be passed upon by the Court after all the facts are in. I want to know what the facts are in this case to decide whether Mr. McMahon or anybody else is guilty of conspiracy, and I will ask that the witness on the stand not mention any other defendant by name. Just 'A defendant' if such be the case.

"Mr. Serody: Your Honor will grant an exception to all the defendants?

"The Court: Yes. See, members of the jury, all we want to get at is this—

"Mr. McCormick: All the defendants.

"The Court: We do want anything said by Mr. McMahon, and it can't be said by any defendant after the completion of the conspiracy to injure any other person on trial, because as I told you the other day, only what one of the defendants said while the conspiracy is in progress is admissible against himself and all others involved. After the completion of the alleged conspiracy, any statement made by one of the defendants is admissible only as to him. Now, it is necessary for us to know what those facts that he has put forth in his statement are to decide whether or not a conspiracy actually existed, of which even he himself can be guilty. But anything that he said in that statement made after the completion of the alleged conspiracy has no evidential weight against any other person involved. Now, we will eliminate all those other persons. But we are asking you to listen to what this statement is as made by him Mr. McMahon, indicating his own guilt, and indicating to you whether from all of the facts that you will have before you when the case is concluded, a conspiracy is proven, because you are going to pass upon that. So nobody is being hurt.

"Mr. Serody: May I have an exception—

"The Court: I am giving an exception—

"Mr. Serody: —to the remarks made to the jury?

"The Court: —to the remarks, yes. No; an exception there first to the ruling and then to the statement given to the jury in explanation of admission of the testimony, and the limitations to be placed on its admission."

It will be seen that over objections of the appellants' counsel, who clearly stated the applicable rule of law, the trial judge admitted McMahon's statement in evidence against the defendants who remained on trial in spite of the fact that it was wholly incompetent under a rule of evidence which has been so well settled for so long a time as to become hornbook law. In so doing the trial judge committed a clearly prejudicial error.

To permit the government witness to read what McMahon had said in his confession was to allow hearsay evidence. Professor Wigmore states that this rule "prohibits the use of a person's assertion, as equivalent to testimony to the fact asserted, unless the assertor is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and his qualifications to make it." Wigmore on Evidence, § 1364. The fact that the hearsay statement is under oath, is not sufficient to remove the objection for there continues to be a deprivation of the defendant's right to cross-examine. Wigmore on Evidence, § 1364 (II).

To this hearsay rule there are of course exceptions as firmly fixed in the law of evidence as the rule itself and there are situations to which the rule is inapplicable. So the rule is satisfied in the case of an admission against interest, for it is obvious that the party making the admission would not cross-examine himself. All he need do is to take the stand on his own behalf and explain the admission, if he thinks it advisable. The hearsay rule is likewise satisfied when a vicarious admission is made. The classic examples are the admission made by an agent on behalf of his principal and of an accomplice on behalf of his co-conspirators. The privity of interest is such as to make the assertion of the one making it that of his principal or of his fellows.

However, if the agency is terminated or the conspiracy is over there is no longer any authority in the agent to act on behalf of his principal or of the accomplice to act on behalf of his co-conspirators. This is part of the substantive law of agency and of conspiracy, rather than of the law of evidence. The error in treat-

ing such assertions as part of the res gestæ was discussed by Thayer in XV American Law Review 80.[1] It, therefore, follows that assertions made by an accomplice after the termination of the conspiracy come within the prohibition of the hearsay rule and are inadmissible. Many years ago the Supreme Court so ruled in Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429. Mr. Justice Gray speaking for the court in that case said (144 U.S. page 308, 12 S.Ct. page 632, 36 L. Ed. 429):

"The court went too far in admitting testimony on the general question of conspiracy.

"Doubtless, in all cases of conspiracy, the act of one conspirator in the prosecution of the enterprise is considered the act of all, and is evidence against all. United States v. Gooding, 12 Wheat. 460, 469 [6 L.Ed. 693]. But only those acts and declarations are admissible under this rule which are done and made·while the conspiracy is pending, and in furtherance of its object. After the conspiracy has come to an end, whether by success or by failure, the admissions of one conspirator, by way of narrative of past facts, are not admissible in evidence against the others. 1 Greenl.Ev. § 111; 3 Greenl.Ev. § 94; State v. Dean, 13 Ired. 63 [35 N.C. 63]; Patton v. State, 6 Ohio St. 467; State v. Thibeau, 30 Vt. 100; State v. Larkin, 49 N.H. 39; Heine v. Commonwealth, 91 Pa. 145; Davis v. State, 9 Tex.App. 363.

"Tested by this rule, it is quite clear that the defendants on trial could not be affected by the admissions made by others of the alleged conspirators after the conspiracy had ended by the attack on the prisoners, the killing of two of them, and the dispersion of the mob. There is no evidence in the record tending to show that the conspiracy continued after that time. Even if, as suggested by the counsel for the United States, the conspiracy included an attempt to manufacture evidence to shield Logan, Johnson's subsequent declarations that Logan acted with the mob at the fight at Dry Creek were not in execution or furtherance of the conspiracy, but were mere narratives of a past fact. And the statements to the same effect, made by Charles Marlow to his companions while returning to the Denson farm, after the fight was over, were incompetent in any view of the case.

"There being other evidence tending to prove the conspiracy, and any acts of Logan in furtherance of the conspiracy being, therefore, admissible against all the conspirators as their acts, the admission of incompetent evidence of such acts of Logan prejudiced all the defendants, and entitles them to a new trial."

---

[1] "The term 'res gesta' is freely used in another class of cases where the specific question is whether a party to the suit shall be affected with responsibility for the declaration of another; not merely whether it may be used as evidence against him, but whether it shall be so used as having been brought home to him, and whether he shall be chargeable with it as if it were his own. When the inquiry is whether the utterance of an agent, or a co-conspirator, is receivable against a party, and it is said, in the case of the agent, that it must have been made in and about the business on which the agent was employed, and while actually engaged in that business; and, of a co-conspirator, that he must have made his declaration while engaged in the common enterprise and regarding that,—in such cases it is common to express this idea by saying that the declaration must be made as a part of the 'res gesta'; and if it is not so made, it is deemed to be 'res inter alios gesta.' Now it is obvious, on a little reflection, that to settle this question adversely to the admissibility of that which is offered in evidence, is really to settle a question in the law of agency or in the law regulating conspiracy,—a question in substantive law . . . Observe, then, that the rule which says that a man shall be chargeable with the acts and declarations of his agent or fellow-conspirator is not a rule of evidence; and when in stating and applying this rule it is said that the agent's declaration must have been made in and about his principal's business, while actually engaged in it, and as a part of the 'res gesta'; or, again, when it is said of a conspirator's declaration, offered against his fellow-conspirator, that it must have been made while he was actually engaged in the common enterprise, about the affairs of it, and as a part of the 'res gesta'; the Latin phrase adds nothing; it is used as a compact expression for *the business*, as regards which the law for certain purposes identifies the two conspirators or the principal and agent. In such cases, evidently, the declaration may be about a past fact as well as a present one, so long as it comes up to the above-named requirements."

In Brown v. United States, 150 U.S. 93, page 98, 14 S.Ct. 37, page 39, 37 L.Ed. 1010, the Supreme Court, quoting from Logan v. United States, supra, said: "In the admission of the statements and declarations of Mrs. Hitchcock, the court assumed that the acts and declarations' of one co-conspirator after the completion or abandonment of a criminal enterprise constituted proof against the defendant of the existence of the conspiracy. This is not a sound proposition of law. * * * If a conspiracy was sought to be established, affecting the plaintiff in error, it would have to be by testimony introduced in the regular way, so as to give the accused the opportunity to cross-examine the witness or witnesses. It could not be established by acts or statements of others directly admitting such a conspiracy, or by any statement of theirs from which it might be inferred."

We need refer to but a few of the many decisions of Circuit Courts of Appeals to the same effect.[2]

█ The device of omitting the names of the defendants from the testimony did not save the trial judge's error from being prejudicial to the appellants. It would be hard to believe that the members of the jury, who had heard the testimony of the other witnesses, did not identify "Mr. First Defendant," "Mr. Second Defendant," and "Mr. Third Defendant," as the witness who read McMahon's statement called them, particularly since the statement described the kind of work which each of them did and where they did it. But even if the jury did not identify the particular defendants referred to in the statement the appellants were equally prejudiced by the reading of it, since the sole purpose of its offer was to help show the existence of a conspiracy as charged. In this connection the trial judge aggravated his error in admitting the statement by specifically instructing the jury that they could consider it in determining the question whether the conspiracy, with which the appellants and the other defendants were charged, was proven. The trial judge's statement in this regard

that "nobody is hurt" is difficult to understand.

█ The trial judge also gave as a reason for admitting the statement that it might aid in the determination of the guilt of McMahon. But this reason was equally unsound, for the jury were not charged with the duty of determining McMahon's guilt, since he had pleaded guilty.

The judgments are reversed and new trials are awarded.

[2] Feder v. United States, 2 Cir., 257 F. 694, 5 A.L.R. 370; Dowdy v. United States, 4 Cir., 46 F.2d 417; Seeman v. United States, 5 Cir., 90 F.2d 88, certiorari denied, 305 U.S. 620, 59 S.Ct. 80, 83 L.Ed. 396; United States v. Corso, 7 Cir., 100 F.2d 604; Fain v. United States, 8 Cir., 209 F. 525; Mayola v. United States, 9 Cir., 71 F.2d 65; Holt v. United States, 10 Cir., 94 F.2d 90.

The decisions of the Supreme Court of Pennsylvania are to the same effect. Heine v. Commonwealth, 91 Pa. 145; Commonwealth v. Epps, 298 Pa. 377, 148 A. 523.